Ruffin, C. J.
 

 After the injunction had been ordered to stand to the hearing, it strikes one as irregular, in effect to reverse that order before the hearing and on motion. But although it be proper to notice the point, we do not stop to investigate it, as there appear to the Court to be strong objections to the substance of the decree under review.
 

 If there could be an appeal from the order of the County Court, that order was vacated by the appeal, and the case stood in Equity, as if no such order had been made, and the then injunction should have been retained, upon the principles of the decision, when the case was formerly before this Court. His Honor however held, that the jurisdiction of the County Court is exclusive, and that there can be no appeal from an order of this kind by that Court. We think it was erroneous in the Court of Equity to undertake to decide that point, at all, under the circumstances of this case; and likewise, that the opinion given on the question of jurisdiction was, in itself, erroneous. The question is one respecting the jurisdiction of two Courts of Law, and is purely a legal ques
 
 *491
 
 tion, and peculiarly fit for the decision of the Courts of Law alone. As far as the Judge in Equity bad the means of forming an opinion from the acts of the legal tribunals, the order was the subject of appeal: for the County Court had granted it, and thus, in form at least, admitted its own order and the Superior Court had, thus far, entertained the appeal. As the point was still
 
 sub judice
 
 at law, the Court of Equity ought not to undertake, before hand, to determine, that the Superior Court could not or would not entertain the appeal fully, and decide the controversy on its merits. One may be sure, that the Chancellor, in England would await the judgment of the law Courts upon a question of legal jurisdiction, then pending in those Courts, and would not proceed to give relief in Equity, upon an assumption, that a higher Court at Law had not a jurisdiction, which it was at the time exercising. As far as the rights of the parties depended in Equity upon that point, the Chancellor would say they must abide the decision, that would be made at law, and that, until that decision, things must remain as they were, without disturbing the state or relation of the parties or altering the subject of the controversy. It is true that the same Judge sits, with us, on both the Law and Equity side of the Court on the circuit; and at the first blush it may seem immaterial in what form, or in which forum, he gave his opinion of the law ; and so it would be, if his opinion were final. But the right of appeal makes an essential difference, and replaces the point upon the same ground here, that it rests on in England. If it were true, that there lies no appeal from an order for a bridge, the obvious method of having a speedy and conclusivo decision on it, was for the Judge to have ordered these defendants to bring on the case at law, on a motion simply to dismiss the appeal, as having been imprudently granted. He would have granted the motion, and then the appellant would have again appealed upon that single question, to this Court; and thus the matter would
 
 *492
 
 be conclusively settled — leaving all things, in the interim,
 
 in statu quo,
 
 as they ought to be, and without exposing the plaintiiF to the illegal encroachments of the defendants, or what might turn out to be such encroachments, in case it should be finally held that the appeal does lie. The difference in the two modes of proceeding is obvious and important. As this matter has been transacted, that is, by the Judge sitting in Equity, deciding that point in law, and, on the foundation of that decision, dissolving the injunction, which the plaintiff, as the owner and in the enjoyment of a franchise, had obtained against the invasion of it, this plaintiff suffers severely by the liberty allowed to the defendants actively to violate the franchise, before the defendants’ right is established at law, and during the whole time required for a decision upon it. For it must be remembered, that an appeal from an interlocutory decree is in the discretion of the Judge on the circuit, and moreover, that it does not remove the cause into this Court, and those defendants, by the method here taken, may bave been enabled to keep open their bridge for eighteen months, while the correctness of the legal opinion has been in review ; and thus in truth the natural order of things has been reversed. It ought to have been remembered, that it might possibly be held by the Court of the last resort, that the appeal did lie ; and therefore the decision on the circuit ought to have been so given, that no prejudice could arise from it before a final adjudication upon it. It would not only be more conformable to the distinct functions of Courts of Law and Equity, but more consonant to the justice due the parties, to have the legal question decided at law ; which could have been rendered without any intermediate change in the condition of things; and we think it was erroneous to have made the decree in equity upon that basis, before its correctness had been duly pronounced at law. This opinion would be sufficient to reverse the decree. But the Court likewise holds that the appeal was properly granted, and
 
 *493
 
 that the effect of it, in this, as in other cases, was to vacate the order appealed from.
 

 Under the Act of 1777, it is true, that the jurisdiction of the County Court, in laying out public roads and es» tablishing ferries, was exclusive. It concerned the local police, and the justices were supposed to be the most competent judges of the local necessity. Therefore no appeal would lie from that Court.
 
 Hawkins
 
 v.
 
 Randolph,
 
 1 Mur. 118.
 
 Atkinson
 
 v.
 
 Foreman,
 
 2 Mur. 55. But that led to such abuses and oppressions of individuals, that in 1813 an act was passed, expressly to give the right of appeal “to any person dissatified with the judgment, the County Court may pronounce.” These broad words, it is. insisted for the defendant, should, by construction, be confined to those persons, to whom, by the previous section, the notice of twenty days must be given — namely, the persons over whose lands a proposed road is to run, or whose ferry is within two miles of the place, at which it is proposed to establish another.
 
 Rev. St. ch.
 
 4,
 
 sec. 2,
 
 and
 
 ch.
 
 104,
 
 sec.
 
 283. But that construction cannot be admitted, as is very clear; because it would take away an appeal in every case of an order for discontinuing a road, although plainly within the mischief and the words of the act. We suppose, indeed, that a mere stranger, who cannot, in any way, be affected by the order, as the inhabitant of another State or County, not having lands or property within the jurisdiction, can not appeal and officiously frustrate a measure, which the authorities and all the people of a County desire. But one affected in his income and property by an order of this kind is as much within the reason of the law, as those persons, who, upon the construction of the defendant’s counsel, can appeal ; and, as the words are large enough to embrace him, he can not be excluded. Indeed in respect to roads and bridges, there is an interest in every inhabitant of a county, who may be required to work on the former, or,
 
 *494
 
 by taxation, to contribute to building or repairing the latter, which is sufficient to entitle him to an appeal, at the risk, it must be remembered, of such costs, as may be adjudged against him, if unsuccessful. It is true the act does not speak expressly of bridges, as well as ferries. But they stand on the same ground of necessity and are pretty much identified in other Statutes. By the Act of 1806, Rev. St. ch. 104, sec. 28, instead of keeping a ferry, the proprietors of it may build a bridge, under the same right and in the same manner, by which the ferry is claimed and held. Upon this ground and on the principle that appeals are favored, this seems to be a case clearly within the equity of the act. Besides the bridge, when, erected, will, strictly speaking, be a part of the highway; and1, as such, the order for it is the subject of appeal. These reasons require a reversal of the decree and enable the Court to pronounce it without taking into consideration an interesting question, which would have been presented by the facts, had the opinion of the Court been different on the other points. It is-whether the Court of Equity could interpose and ought not to interpose, by injunction, against an order, by which, it is admitted, the value of the plaintiff’s property is impaired one-half, until some reasonable compensation be made. The statute confers the whole jurisdiction of roads, ferries, and bridges, on the County Court, subject, of course, to appeal; and therefore it was-unquestionably competent to that Court, to establish this, as a free bridge. But stil'l it is to be enquired, on what terms ought that Court to accept and establish the bridge, or rather, on what terms, ought the Court of Equity to allow the bridge to- be opened thus, to the detriment of the plaintiff. The point is mentioned, merely that it may be seen, that it has not been overlooked nor regarded as of no consequence, and not for the purpose of deciding or discussing it. There is no necessity to do so on this appeal, and we do not mean, an opinion on it, for we have really formed
 
 *495
 
 none. We can only say that there ought to be a plain public utility, in the new bridge thus interfering with a franchise, previously granted and on which much money has been spent, to justify its establishment, on any terms; and the very highest public necessity for it to excuse an order for its erection, without compensation, if any thing can excuse it. But we are relieved from the further investigation at present, as the whole- subject is within the control of the Superior Court, on the appeal there pending ; and we cannot anticipate what case may be made before that Court, nor the decision on it, but must suppose before hand that it will be legal and just on the other grounds. However the Court holds, that the decree must be reversed, with costs in this Court, and the cause remanded with directions to continue the injunction to the hearing.
 

 Per Curiam.
 

 Ordered accordingly.